ESTATE OF REES: STATE, Appellant, vs. RUDD, Executor, and others, Respondents.

*January 18—February 13, 1940.*

636

For the appellant there were briefs by the *Attorney General, Harold H. Persons,* assistant attorney general, and *Neil Conway,* inheritance tax counsel, and oral argument by *Mr. Persons* and *Mr. Conway.*

For the respondents there was a brief by *Richardson, Robertson, Reeder & Stearns* of Milwaukee, and oral argument by *Perry J. Stearns.*

FOWLER, J.    John Krom Rees, a resident of New York, died March 9, 1907, leaving a will by which he gave two thirds of the income of his property to his wife during her life; by paragraph 3 he gave to his children one third of such income, to be divided among them as his wife should direct Paragraph 4 reads:

"At the death of my wife, I direct that all property real and personal be divided equally among the surviving children: or their issue as my wife directs in her will."

The will was admitted to probate in New York in 1907. The testator at his death owned real estate in Milwaukee, and in 1916 the will was admitted to probate in Milwaukee

county. The testator left surviving him three minor children. The widow in 1923 instituted in the circuit court for Milwaukee county infant-heir proceedings for the sale of this real estate. The court directed this land and all interest of everybody interested therein under the will be sold by a referee, the proceedings to abide the order of the court. A contract for the sale of the land for $320,000 subject to a mortgage of $115,000 which the purchaser assumed was procured, the purchase price over the mortgage being payable in instalments to "such trustee or trust company as the court" might designate. The contract was approved by the court, sale and conveyance were made and confirmed by the court, and on appeal to this court the order of confirmation was affirmed in *Application of Rees,* 182 Wis. 239, 196 N. W. 239. This order contained an appointment of the First Wisconsin Trust Company as trustee "to act under and pursuant to said agreement of sale," the trust company accepted the trust, and has since administered it, and now has in its possession property inventoried at book values at $189,387.63.

In 1932 inheritance tax proceedings were had in the county court of Milwaukee county in the estate of Rees, the net value of the property was fixed at $31,834.17, and a tax was assessed and paid totaling $158.36, $1.13 of which was assessed to the widow and $52.41 to each of the three surviving children of the testator.

In 1936 the widow of the testator died and left a will, one provision of which is:

"In execution of the power of appointment vested in me by the will of my late husband, John Krom Rees, I give, devise and bequeath to our children, Mabel Sands Coffin, Emma Rees Rudd, and Florence Dubois Moore, all and every, the real and personal property wherever situated, of which my said husband died seized and possessed, . . . in equal shares, or if any of my said daughters shall die before

me, to her issue, or should she leave no issue, to her sisters, or to their issue, if they, or either of them, should have predeceased her, such issue to take the share of her mother."

This will was admitted to probate in New York. The three daughters of John Rees who survived him also survived his widow, and each of these, after the widow's will was admitted to probate, filed an instrument stating that she renounced "her right to take under the power of appointment exercised by the widow," and elected "to reject said appointment and to take the property so appointed" under the will of John Krom Rees. The executor of the widow's will in 1937 filed in Milwaukee county court, in the proceeding wherein her will was probated, a petition for the appointment of the public administrator as special administrator "for the purposes of adjustment, determination and payment of the inheritance or transfer tax due to the state of Wisconsin, if any, on the property" of the decedent John Krom Rees. Hearing was had on this petition in January, 1939, Hon F. W. Bucklin, county judge of Washington county, presiding. The court on April 7, 1939, entered an order deciding that no inheritance tax was due the state. From this order the state appeals. The ground of the county court's decision was that the widow of John Krom Rees did not "really have a power to exercise as donee under her husband's will."

The state contends that the will of Rees did confer a power of appointment on his widow, and in support of its contention cites the statement of this court in the opinion in *Application of Rees, supra,* as follows (p. 241):

"The will of the testator should be carried out according to its terms, in so far as possible. The will in this matter bears evidence of confidence and trust of the testator in his widow. She has it wholly within her discretion as to how the property shall be divided among her heirs at her death."

If the will of Rees had been directly before the court for construction this statement would rule the instant case. But

no question of construction was involved. The will of Rees was indirectly involved because "the issue" of the three surviving daughters of the testator might eventually be entitled to share in the testator's property if the will were construed as conferring a power upon the testator's wife. But in the only proceeding before the court the three daughters of Rees, at the time adults, and his widow desired the sale of the property, because the property consisting of land was deteriorating and becoming nonproductive, and to produce income new buildings were necessary which the widow and children were without means of erecting and initiated proceedings for the sale of what interest, if any, the infant children of these daughters might eventually acquire in the land through the will of Rees. The guardian *ad litem* of infant children of the daughters appealed the order confirming the sale. The court, in protection of the contingent interest of these children, only approved and confirmed the sale of such interest, if any, as they might ultimately acquire under the will. Construction of the will of Rees not being in issue on the appeal, the decision on the appeal is not *res judicata* as to that construction, although the statement quoted from the opinion does show that the court then considered that the wife had a real power of appointment. Paragraph 4 must therefore be now construed as an original proposition.

Paragraph 4 of the will is a short provision, but different persons may well draw different conclusions as to what the testator meant by it. He manifestly meant something, and what he did mean must be determined and effectuated. His direction was that at his wife's death the property "be divided equally among the surviving children: or their issue as my wife directs in her will." The surviving children were the three daughters of the testator by his wife who were named in the wife's will. It seems to us that by the provision just stated the testator most probably meant that should a daughter die before her mother the mother might then by

her will give the portion of the property that would have gone to the deceased daughter, had she survived the mother, to her issue if she left any instead of to the surviving daughter or daughters of the testator. By the first sentence of paragraph 4 the portion of a daughter who should die before the mother would go to the daughters or daughter who survived the mother. The testator, as it seems to us, by adding "or their issue as my wife directs in her will," meant to provide that the mother might prevent this by directing by her will that the share of a daughter who should predecease her mother should go to such daughter's issue, if she left any. We so construe the paragraph.

As a makeweight to this construction it may be considered that a daughter would have no heirs until she died, and if living at her mother's death she would have no heirs for the mother to give the property to. It is hardly to be conceived that after the father had devised the remainder after his wife's death to his children living at his death he intended to give his wife the power to take it away from those living at the wife's death and give it to their children.

Under the construction above given a real power of appointment was given to the mother, but she could exercise it only upon the contingency that a surviving child of the testator predeceased her. As all of the daughters survived the mother, the contingency did not arise which gave the mother the right to exercise the power of appointment, and the property passed under the will. In this view the imposition of the inheritance tax in 1932 exhausted the court's power of taxation.

The appellant urges that the county court should have imposed a transfer tax under the cases of *Montague v. State,* 163 Wis. 58, 157 N. W. 508; *Will of Morgan,* 227 Wis. 288, 277 N. W. 650, 278 N. W. 859, and sec. 72.01 (5), Stats. But in these cases the life tenants, corresponding to the wife of Rees in the instant case, were given an absolute power of appointment, as distinguished from a contingent

one, and they exercised the power. In the instant case the wife's power, as we construe the will, was contingent, and the contingency on which she might exercise the power did not arise. It is true that in the *Montague Case, supra,* the power of appointment was not exercised as to a small part of the property involved, and a transfer tax was nevertheless imposed on that part under what is now sec. 72.01 (5), Stats., which provides that—

"Whenever any person . . . possessing such a power of appointment . . . shall omit or fail to exercise the same . . . a transfer taxable under the provisions of sections 72.01 to 72.24, inclusive, shall be deemed to take place to the extent of such omission or failure, in the same manner as though the persons . . . thereby becoming entitled to the possession or enjoyment of the property to which such power related had succeeded thereto by a will of the donee of the power failing to exercise such power, taking effect at the time of such omission or failure."

In the *Montague Case, supra,* the will first gave absolute power to the donee by will to distribute the remainder in the property between her children living at her death as she might wish, and then provided that in case of her failure to exercise the power, the trustee should divide it between her children equally. The court imposed the tax under the statute because the donee failed to exercise a power by which she might by will have divided the property equally between her children as the trustees were directed to divide it if she did not act under the power. The fact that she did not exercise the power indicated that the donee wished the property to go as the trustees were required to divide it in case she did not exercise her power to divide it herself, and the court held that, under the statute cited, the tax could not be evaded or avoided by her omission to exercise the power. The instant case is not one of a failure to exercise a power of appointment. It is one of an attempt to exercise such power when such power did not exist.

The respondents cite two cases as upholding the order of the county court, *Matter of Lansing's Estate,* 182 N. Y. 238, 74 N. E. 882, and *Helvering v. Grinnell,* 294 U. S. 153, 55 Sup. Ct. 354, 79 L. Ed. 825. The New York will bequeathed and devised property to trustees for the use in severalty during their respective lives of the testator's children living at his death, and after a child's death to the child's heirs, with power to a surviving child by will to devise the remainder after the child's death among the child's heirs and collateral relatives in such proportion and manner as the child might wish. A daughter who survived the testator, in professed exercise of the power given by the father's will, devised the remainder to her daughter who was her only heir. The trial court imposed a succession tax against the heir on the ground that the heir took by appointment under the power given to the mother. The judgment was reversed on the ground that the will of the original testator gave the remainder after termination of a child's life estate to the child's heirs, subject only to a power in the child by will to change or limit the rights of the child's heirs by disposing of the remainder among the child's heirs and collateral relatives as the child might see fit. The will of the child involved did not change or limit the rights of the child's heirs in the remainder, but professed by appointment to devise the remainder precisely as the original testator had devised it. As there was no change, there was no appointment. The exercise of the power of appointment therefore transferred nothing and no transfer tax could be imposed. There was also filed in that case as here a written renunciation of the heir of rights under her mother's will and an election to take under the grandfather's will. The court also held that as the heir renounced under the mother's will and elected to take under the grandfather's will, she received nothing under her mother's will and no tax could be imposed because there was nothing to tax.

In the *Grinnell Case, supra,* a testator by his will created a trust for the benefit of his daughter, the income to be paid to her during her life, with remainder to such persons as she should by will appoint, but with provision that in default of appointment by her the property should go to her issue by right of representation or in default of issue to her next of kin. The daughter died leaving no issue and leaving as her only next of kin two sisters. The daughter by her will by professed exercise of the power of appointment given her by her father's will gave the trust fund to her two sisters. The sisters renounced under their sister's will and elected to take under the will of their father. The commissioner of revenue imposed a transfer tax against the sisters. The trial court held that the sisters took under their father's will, following the New York case, and the supreme court of the United States affirmed its decision.

Were the wills here involved to be construed by a court of the state of New York, of which both Rees and his wife were residents at the time of their respective deaths, such court would hold that the daughters took under the will of their father, and that nothing passed to them under the mother's professed exercise of her power of appointment; and that as the mother's will transferred nothing to the daughters, no transfer tax could be imposed against them in course of the settlement of the mother's estate. However, the property involved in the instant case was land situated in Wisconsin. "The validity and effect of a will of an interest in land are determined by the law of the state where the land is." Restatement, Conflict of Laws, p. 333, § 249. Thus, the father's will is to be here construed, and its effect is to be here determined, both whether it gave the mother any power of appointment and if it gave such power, whether it was absolute or contingent, independent of how the courts of New York might construe it. The New York and United States supreme court cases above cited are of effect only so

far as upon the reasoning on which they are based they are persuasive. But to us their reasoning is persuasive. Under that reasoning the instant original will created an estate or interest in the testator's property as provided by the first sentence of paragraph 4 in each of the three daughters of the testator, subject to its becoming divested, on the contingency of a daughter's predeceasing her mother, by the exercise by the mother in her will of the power given her by her father's will. But as the contingency on which the mother's power of appointment rested did not arise, her attempt to exercise the power was nugatory. It transferred nothing, hence no transfer tax can be imposed.

It should perhaps be noted that the New York case above cited involved a renunciation by the persons appointed by the donee in her will of the gift thereby made to them, and an election to take under the will of the original testator, precisely such as we have here. The New York case ruled not only that no power of appointment was exercised by the donee, wherefore the persons took under the original testator's and not under the donee's will, but that they also so took because of their renunciation. We do not see that the professed renunciations, either in the cases cited or in the instant case, had any effect. As nothing passed by the professed exercises of a power of appointment there was nothing to renounce.

The above seems to us sufficient to control the decision, and we refrain from discussion of the multitude of other points raised and decisions cited in the briefs of counsel.

*By the Court.*—The order of the county court is affirmed.

ROSENBERRY, C. J., and FRITZ, J., dissent.